1
2025 CO 2 The People of the State of Colorado, Petitioner v. Jesus Rodriguez-Morelos. Respondent No. 22SC982Supreme Court of Colorado, En BancJanuary 21, 2025
2

         
Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 19CA915

         
Attorneys for Petitioner: Philip J. Weiser, Attorney General
Wendy J. Ritz, First Assistant Attorney General Caitlin E.
Grant, Assistant Attorney General Denver, Colorado

         
Attorneys for Respondent: Megan A. Ring, Public Defender Kira
L. Suyeishi, Deputy Public Defender Denver, Colorado

3

         
JUSTICE HART delivered the Opinion of the Court, in which
CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
HOOD, JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE
BERKENKOTTER joined. JUSTICE HOOD, joined by JUSTICE
BOATRIGHT, specially concurred in the judgment.

4

         
OPINION

          HART,
JUSTICE

         ¶1
In 2015, Jesus Rodriguez-Morelos started running Certified
Nursing Assistant ("CNA") classes, falsely telling
prospective students that the classes were affiliated with
the nonprofit organization United with Migrants. After
receiving complaints about the classes, including that
Rodriguez-Morelos was unlawfully receiving money for classes
the state had not approved, the Colorado Department of
Regulatory Agencies ("DORA") investigated.

         ¶2
The People charged Rodriguez-Morelos with several crimes,
including identity theft in violation of section
18-5-902(1)(a), C.R.S. (2024), which prohibits the knowing
use of "the personal identifying information ... of
another" to obtain a financial benefit. The statute
defines "[p]ersonal identifying information" as
certain documents and information that can be used to
identify "a specific individual." §
18-5-901(13), C.R.S. (2024). Given the statutory language,
Rodriguez-Morelos argues that he could not be found guilty of
identity theft under this provision because the classes he
offered were associated with a nonprofit organization and not
a specific individual.[1]

5

         ¶3
We agree. The provision of the identity-theft statute that
references personal identifying information applies only to
information concerning single, identified human beings. We
therefore affirm the judgment of the court of appeals.

         I.
Facts and Procedural History

         ¶4
In 2015, Rodriguez-Morelos, who had previously worked as a
volunteer for United with Migrants and other organizations
providing aid to the migrant community, began offering CNA
classes in that community. Without United with Migrants's
authorization, he told prospective students the classes were
affiliated with the nonprofit and held himself out as the
group's "Director of Education" - a position
that did not exist. Without the nonprofit's knowledge, he
gave some students a tax-exempt document bearing United with
Migrants's name. Each student enrolled in these classes
paid $63 to Rodriguez-Morelos. Over time, he added other
programs related to the medical profession at additional
cost, also without the nonprofit's authorization.

         ¶5
Eventually, problems with these classes came to light: they
were overcrowded; students felt that they were not learning
the requisite skills; and Rodriguez-Morelos refused to
provide students with receipts for their payments. Reverend
Carol Meredith, who worked at an Aurora-based church where
Rodriguez-Morelos volunteered, filed a report about the
classes with DORA,

6

complaining about Rodriguez-Morelos's practices. DORA
investigated and found that the CNA classes were not state
approved, which meant Rodriguez-Morelos could not legally
receive money for them.

         ¶6
The People charged Rodriguez-Morelos with three counts of
theft, one count of criminal impersonation, and one count of
identity theft. A jury convicted Rodriquez-Morelos as
charged, and he appealed.

         ¶7
A division of the court of appeals affirmed the judgment of
conviction for the theft and criminal impersonation charges
but vacated the conviction for identity theft. People v.
Rodriguez-Morelos, 2022 COA 107M, ¶ 1, 522 P.3d
213, 217. The division concluded that Rodriguez-Morelos's
use of the nonprofit organization's name and tax-exempt
document was not the use of personal identifying information
under the id entity-theft statute because the statute defines
"personal identifying information" as information
pertaining to an individual, not an organization.
Id. at ¶ 26, 522 P.3d at 220. The People
petitioned for certiorari review, arguing that a nonprofit
organization could also have statutorily covered personal
identifying information. We granted the petition and now
affirm the division's judgment.

         IL
Analysis

         ¶8
This matter presents a straightforward question of statutory
interpretation, which we review de novo. See McCoy v.
People, 2019 CO 44, ¶ 37,442 P.3d 379,389.

7

When we interpret statutes, we read the General
Assembly's chosen language in context and construe it
"according to the rules of grammar and common
usage." Id. We avoid interpretations that would
render any words or phrases superfluous. Id. at
¶ 38, 442 P.3d at 389; People v. Rojas, 2019 CO
86M, ¶¶ 11-12, 450 P.3d 719, 721.

         ¶9
Examining section 18-5-902(1) (a) with these precepts in
mind, we conclude that Rodriguez-Morelos's use of United
with Migrants's name and tax-exempt document did not
constitute the use of personal identifying information under
the statute.

         ¶10
Colorado's identity-theft statute provides that a person
commits identity theft if that person: "[k]nowingly uses
the personal identifying information, financial identifying
information, or financial device of another without
permission or lawful authority with the intent to obtain
cash, credit, property, services, or any other thing of value
or to make a financial payment. . . ." §
18-5-902(1) (a).

         ¶11
"Personal identifying information," "financial
identifying information," and "financial
device" are each statutorily defined. Neither the
language in the definition of "financial identifying
information," see § 18-5-901(7), nor the
language in the definition of "financial device,"
see § 18-5-901(6), tether this type of
information only to human beings -or generally to the
identity of the

8

information holder. Instead, both definitions focus on
different tools that can be used "to obtain cash,
credit, property, services, or any other thing of value or to
make a financial payment." § 18-5-901(7). The
principal difference between the two definitions is that
subsection 901(6) covers physical instruments or devices
-such as checks or credit cards -and subsection 901(7)
includes the type of information appurtenant to those devices
- such as checking account or credit card numbers. §
18-5-901(6)-(7).

         ¶12
In contrast, the definition of "personal identifying
information" in section 18-5-901(13) has a different
focus.

"Personal identifying information" means
information that may be used, alone or in conjunction with
any other information, to identify a specific
individual, including but not limited to a name; a date
of birth; a social security number; a password; a pass code;
an official, government-issued driver's license or
identification card number; a government passport number;
biometric data; or an employer, student, or military
identification number.

§ 18-5-901(13) (emphasis added).

         ¶13
Notably, only human beings can possess most of the types of
information listed in this definition of "personal
identifying information." An organization does not have
a social security number, a date of birth, a
government-issued driver's license or identification card
number, a passport number, biometric data, or a student or
military identification number.

9

         ¶14
The People argue, however, that organizations do or could
have some of the identifying information included
within the definition - such as a name, which is what
Rodriguez-Morelos used in this case to lend credibility to
his classes - or a password or pass code. They further note
that the definition of "personal identifying
information" is not exclusive and that there might be
other personal identifying information that an organization
could hold.

         ¶15
These are both legitimate points. But we cannot ignore the
fact that most of the identifying information
included in this definition is exclusive to human beings, and
we must read the definition in that light. Moreover, the
General Assembly further indicated its intent to apply this
aspect of the identity-theft statute to humans and not to
organizations through the limitation of "personal
identifying information" to what is used to identify
"a specific individual." See id.

         ¶16
The statute does not define the term "specific
individual," but dictionary definitions and common usage
point in only one direction. We agree with the division's
cogent analysis of the best way to read the dictionary
definitions of these words when they are used together.
Rodriguez-Morelos, ¶ 25, 522 P.3d at 219.
"Specific" means "constituting or falling into
a specifiable category." Specific,
Merriam-Webster Dictionary,
https://www.merriam-webster.com/dictionary/ specific
[https://perma.cc/M8US-E47Q]. "Individual" is
defined as "a particular being or thing as distinguished
from a class, species, or collection: such as (1) a

10

single human being as contrasted with a social group or
institution" or "a particular person."
Individual, Merriam-Webster Dictionary, https://
www.merriam-webster.com/dictionary/individual
[https://perma.ee/JJ3V-W3AG], As the division concluded, the
best reading of these definitions together is that an
"individual" means "a single human being as
contrasted with a social group or institution."
Rodriguez-Morelos, ¶ 25,522 P.3d at 219. This
reading "gives voice to both the noun and the
adjective" without rendering the adjective
"specific" superfluous. Id.

         ¶17
The People's final argument is that the class of victims
contemplated by the statute includes organizations as well as
individuals and that the division's reading of the
statute ignores that legislative intent. In particular, they
observe that section 18-5-902(1)(a) prohibits the use of the
"personal identifying information, financial identifying
information, or financial device of another"
and that "another" includes both individuals and
organizations. (Emphasis added.) Therefore, they argue,
personal identifying information must include information of
organizations.

         ¶18
We agree that the phrase "of another" defines the
class of victims under the statute. And organizations are
included in that class of victims. See §
18-5-901(11) (defining "another" to include both
"a natural person" and "a business
entity"). But reading personal identifying information
as pertaining only to human beings

11

does not render this phrase superfluous. Organizations are
within the class of victims protected by the statute because
a defendant can be convicted of identity theft by using the
financial identifying information or financial device of an
organization. As we have explained, however, the definition
of personal identifying information within the statutory
scheme is focused on specific individuals and does not apply
to organizations. For that particular type of identity theft,
a defendant can only be convicted when the crime is committed
against a specific human person.

         ¶19
Therefore, based on the plain language of the statute,
Rodriguez-Morelos did not commit identity theft against
United with Migrants when he used the nonprofit's name
and distributed the tax-exempt document without permission.
Neither act constitutes the use of (1) personal identifying
information as contemplated in the statute; (2) financial
identifying information; or (3) the financial device of the
organization.

         III.
Conclusion

         ¶20
Colorado's identity-theft statute provides that personal
identifying information concerns only single, identified
human beings and not nonprofit organizations. We therefore
affirm the judgment of the court of appeals.

         
JUSTICE HOOD, joined by JUSTICE BOATRIGHT, specially
concurred in the judgment.

12

         
JUSTICE HOOD, joined by JUSTICE BOATRIGHT, specially
concurring.

         ¶21
While the majority reaches the right conclusion under our
rules of statutory interpretation, I believe that
Colorado's identity theft statute is ambiguous, and the
legislature might have intended a different result. So, I
join the majority's opinion, but I write separately to
urge the General Assembly to clarify its intent.

         I.
Analysis

         ¶22
Under Colorado law, a person commits identity theft if he
"[k]nowingly uses the personal identifying
information, financial identifying information, or
financial device of another without permission or
lawful authority with the intent to obtain cash, credit,
property, services, or any other thing of value or to make a
financial payment." § 18-5-902(1)(a), C.R.S. (2024)
(emphases added).

         ¶23
On the one hand, the term "of another" defines the
class of victims as both "a natural person" and
"a business entity." § 18-5-901(11), C.R.S.
(2024); see also Maj. op. ¶ 18 (acknowledging
that "'another' includes both individuals and
organizations"). Moreover, the definitions of
"financial identifying information" and
"financial device" contain terms that apply to a
victim who is a natural person or that is an entity. §
18-5-901 (6)-(7); see also Maj. op. ¶ 11. On
the other hand, the definition of "personal identifying
information" mostly contains terms that would apply to a
natural person. § 18-5-901(13); see also Maj.
op. ¶ 13.

13

         ¶24
The key to the present dispute is whether entities can be
victims of identity theft involving the use of personal
information and not just involving the use of financial
identifying information and the use of a financial device.
§ 18-5-902(1)(a). Did the General Assembly intend that
an entity -such as United with Migrants -could be the victim
of identity theft when the defendant's conduct involves
the use of the items or information included in the
definition of personal identifying information?

         A.
Statutory Interpretation

         ¶25
In interpreting a statute, our primary purpose is to
effectuate the intent of the General Assembly. McCoy v.
People, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. We
first look to the plain language of the statute, giving
"words and phrases their plain and ordinary
meanings." Id. "[W]e must avoid
constructions that would render any words or phrases
superfluous or lead to illogical or absurd results."
Id. at ¶ 38, 442 P.3d at 389.

         ¶26
A statute is ambiguous if it is reasonably susceptible to
multiple interpretations. Id. If the meaning of the
statute is unambiguous, we need not employ other interpretive
tools. Id. If it is ambiguous, "then we may
consider other aids," such as employing tools of
statutory construction, considering the statute's
legislative history, and considering "the end to be
achieved by the statute." Id.; see also St. Vrain
Valley Sch. Dist. RE-1J v. A.R.E. ex rel. Loveland, 2014
CO 33, ¶ 11, 325 P.3d 1014, 1019; § 2-4-203(1),
C.R.S. (2024)

14

("If a statute is ambiguous, the court, in determining
the intention of the general assembly, may consider among
other matters: (a) The object sought to be attained
....").

         B.
Both Interpretations Are Reasonable

         ¶27
The statute is ambiguous because both the majority's and
the Attorney General's interpretations of the statute are
reasonable.

         ¶28
As noted above, the identity theft statute prohibits wrongful
use of three types of information "of another" -
personal identifying information, financial identifying
information, and a financial device. § 18-5-902(1)(a).
The term "of another" means both "a natural
person" or "a business entity." §
18-5-901(11).

         ¶29
But the statute also defines "personal identifying
information" as:

information that may be used, alone or in conjunction with
any other information, to identify a specific
individual, including but not limited to a name; a date
of birth; a social security number; a password; a pass code;
an official, government-issued driver's license or
identification card number; a government passport number;
biometric data; or an employer, student, or military
identification number.

§ 18-5-901(13) (emphasis added). Unfortunately, the
statute doesn't tell us what "specific
individual" means.

         ¶30
The majority reasons that because most items listed in the
definition apply only to natural persons, this type of
identity theft can only be inflicted on victims who are
natural persons. The majority's analysis implicitly (and
soundly) rests on the "well-worn canon of statutory
construction, noscitur a sociis, 'a word may be

15

known by the company it keeps.'" St. Vrain
Valley Sch. Dist., ¶ 22, 325 P.3d at 1021-22
(quoting Graham Cnty. Soil &Water Conservation Dist.
v. United States ex rel. Wilson, 559 U.S. 280, 287
(2010)). According to the canon, because terms such as
"date of birth," "social security
number," "driver's license,"
"passport number," and "biometric data"
can only belong to a natural person, the remainder of the
terms should be similarly limited. This canon also helps
clarify "employer, student, or military identification
number," suggesting that the General Assembly may have
intended "employer identification number" to mean a
number that an employer assigns an employee (rather than one
assigned to an entity employer).

         ¶31
The majority also reasonably relies on dictionary definitions
and common usage analysis of "specific individual"
that indicate that the term means "a single human being
as contrasted with a social group or institution." Maj.
op. ¶ 16 (quoting Individual, Merriam-Webster
Dictionary,
https://www.merriam-webster.com/dictionary/individual
[https://perma.cc/JJ3V-W3AG]).

         ¶32
Conversely, the Attorney General reasonably asserts that the
General Assembly's definition of the term "of
another," which includes entities, seems designed to
encompass all three types of identity theft.
Likewise, section 2-4-401(8), C.R.S. (2024), states:
"The following definitions apply to every statute,
unless the context otherwise requires: . . . 'Person'
means any individual, corporation, government or governmental
subdivision or agency, business trust, estate, trust,

16

limited liability company, partnership, association, or other
legal entity." This definition suggests that
"personal information" could include the
information of an entity.

         ¶33
The Attorney General also notes that the General Assembly
could have used "natural person" instead of
"specific individual" if it wished to constrain the
definition of personal identifying information to that one
class of victims. The General Assembly also doesn't
explain why it would limit identity theft involving
personal identifying information to natural persons when the
other forms of identity theft are more expansive.

         ¶34
Lastly, the Attorney General asserts that the legislative
history points toward the General Assembly's intent that
entities can be victims of all three types of identity theft.
The Attorney General notes that one witness before the House
Judiciary Committee, who was introduced to explain the
"technicalities" of the bill, stated that it was
important that the definition of the term "of
another" includes entities. Hearing on H.B. 1326 before
the H. Judiciary Comm., 65th Gen. Assemb., 2d Sess. (Feb. 23,
2006).

         ¶35
The Attorney General's interpretation of the text is
sufficiently compelling to render the statute ambiguous. This
ambiguity permits us to consider the legislative history.
However, I'm not persuaded that the legislative history
is helpful in resolving that ambiguity. In the House
Judiciary Committee, one bill

17

sponsor briefly mentioned the cost of identity theft to
businesses along with the toll it takes on citizens.
Id. But those testifying in favor of the bill before
both the House and Senate Judiciary Committees, including the
witness cited by the Attorney General, shared stories in
which the victims were exclusively natural persons.
Id.; Hearing on H.B. 1326 before the S. Judiciary
Comm., 65th Gen. Assemb., 2d Sess. (Apr. 24, 2006). And when
the House Judiciary Committee voted to strike an instance of
"a person" and replace it with "another"
in the description of the crime, the bill sponsor emphasized
that "another" encompasses both living and dead
persons and later, before the whole House of Representatives,
described the impact of identity theft on the families of
deceased victims, with no mention of entities. Hearing on
H.B. 1326 before the H. Judiciary Comm., 65th Gen. Assemb.,
2d Sess. (Feb. 23, 2006); Second Reading of H.B. 1326 before
the House, 65th Gen. Assemb., 2d Sess. (Apr. 11, 2006).

         ¶36
Even though the legislative history is cryptic, we may also
consider the object that the General Assembly wished to
attain. The identity theft statute's use and definition
of the term "of another" suggest that the General
Assembly's goal was to protect natural persons
and entities in Colorado from being victimized by
identity theft. Given this overarching purpose, it seems odd
to conclude that the General Assembly nonetheless meant to
exclude entities from the protection afforded to those whose
personal identifying information is stolen (particularly

18

the entity's name). Yet, the majority's reasoning
wins the day under the law governing statutory
interpretation.

         ¶37
Because the definition of "personal identifying
information" is reasonably susceptible to multiple
interpretations, its meaning is ambiguous. Although the
majority's analysis is reasonable, it seems the
legislature might have intended a different result. I
therefore respectfully urge the General Assembly to clarify
its intent.

---------

Notes:

[1] We granted certiorari to review the
following issue:

1. Whether the court of appeals erred in holding that
the crime of identity theft does not apply to a business
entity's personal identifying information and applies
only to information concerning single, identified human
beings.

---------